**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Berry BURNS, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph L. LAFORNEY, Defendant–
Appellant.**

**Nos. 92–5074, 92–5175.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1992.

Decided March 19, 1993.

Thomas Franklin Loflin, III, Durham, North Carolina, argued (William H. Dowdy, Wilmington, NC, on brief), for defendant-appellant Laforney.

David Taylor Shelledy, Crim. Div., U.S. Dept. of Justice, Washington, DC, argued (Sidney Glazer, Crim. Div., U.S. Dept. of Justice, Washington, DC, Margaret Person Currin, U.S. Atty., J. Douglas McCullough, Sr. Litigation Counsel, Raleigh, NC, on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

Following trial by jury, Donald Berry Burns and Joseph L. Laforney were convicted of charges stemming from a scheme to import marijuana and cocaine into the United States. Their cases, consolidated on direct appeal, present numerous claims in which we find no merit. We therefore affirm the judgment of the district court.

I

The manifold issues presented by this appeal rest upon procedural history of some complexity, which for clarity's sake we describe in two parts.

A.

On March 12, 1991 a grand jury in the Eastern District of North Carolina returned an eleven-count indictment against Burns, Laforney, and four other defendants.[1] Laforney was charged with (1) conspiring to import marijuana and cocaine into the United States, 21 U.S.C. § 963; (2) conspiring to distribute and to possess with intent to distribute marijuana and cocaine,

---

1. Three of the other defendants entered guilty pleas pursuant to plea agreements with the Government. All charges against the fourth, Thomas Jackson Hawes, were dismissed as breaches of a plea agreement he had entered in connection with an earlier indictment. *See United States v. Hawes,* 774 F.Supp. 965, 970–972 (E.D.N.C.1991).

*id.* § 846; (3) conspiring to smuggle marijuana and cocaine into the United States, 18 U.S.C. § 545; and (4) travelling in interstate commerce with intent to receive payment for promotion of a business enterprise involving distribution of cocaine, *id.* § 1952(a)(3). Burns was charged with (1) conspiring to import cocaine into the United States, 21 U.S.C. § 963; (2) conspiring to distribute and to possess with intent to distribute cocaine, *id.* § 846; (3) conspiring to smuggle marijuana and cocaine into the United States, 18 U.S.C. § 545; and (4) travelling in interstate commerce with intent to facilitate a business enterprise involving distribution of cocaine, *id.* § 1952(a)(3).

Upon Burns's pretrial motion, the district court dismissed the three conspiracy counts against him as breaches of a plea agreement Burns had entered in connection with an indictment returned on May 16, 1989 in the Eastern District of North Carolina. *See United States v. Hawes,* 774 F.Supp. 965, 972–977 (E.D.N.C.1991). The 1989 indictment charged Burns with essentially the same offenses as its 1991 counterpart,[2] except that the drug alleged to have been the object of its importation- and distribution-conspiracy counts was marijuana, not cocaine.[3]

At the time the grand jury returned the 1989 indictment, the Government had received unsubstantiated reports that Burns was involved in cocaine as well as marijuana trafficking. Based upon the facts then available to them, however, drug investigators believed that all the acts allegedly committed in furtherance of the conspiracy counts in the 1989 indictment stemmed from a single *marijuana* importation and distribution conspiracy. The Government knew, for example, that Burns and his supposed co-conspirators had travelled between various parts of the Caribbean and the southeastern United States in the late summer and early autumn of 1987. When the 1989 indictment proceeded to trial, the Government introduced evidence of this travel to prove the defendants' involvement in the marijuana conspiracy.

Shortly after all the evidence in Burns's 1989 marijuana-conspiracy trial had been placed before the jury, the Government's investigators obtained more facts incriminating Burns and Laforney in drug-related activities. While the jurors were deliberating, law enforcement officials learned that Luis Taboada, a Colombian citizen, had been apprehended in South Carolina together with more than 500 kilograms of cocaine. Interviews with Taboada revealed that in addition to their marijuana-related activities, Burns, Laforney, and others had brought three large cocaine shipments from the Caribbean into the United States between the summer of 1986 and October 1987. (One of the shipments, the result of a February 1987 journey to Aruba, was the basis for the single interstate travel violation charged in Burns's indictment.) Thus the Government became aware that the overt acts it had thought were committed in furtherance of the 1989 marijuana-importation conspiracy actually involved cocaine.

Burns's trial on the counts in the 1989 indictment resulted in a hung jury. Burns then entered into a plea agreement in which he pleaded guilty to the indictment's two interstate travel counts in exchange for the Government's promise that it would not oppose his motion to dismiss the marijuana-conspiracy counts. Shortly after Burns was sentenced on his guilty plea, the magnitude of his and Laforney's involvement with cocaine importation came to light through the detailed testimony of Robert Kunhardt, an alleged participant in the conspiracy. Relying on Kunhardt's revelations, the Government sought—and the grand jury returned—a new indictment against Burns and Laforney on April 19, 1990. As the Government's knowledge of the group's activities further increased, it

---

**2.** The 1989 indictment charged Burns with (1) one count of conspiring to import marijuana, 21 U.S.C. § 963; (2) one count of conspiring to possess with intent to distribute marijuana, *id.* § 846; and (3) two counts of interstate travel to facilitate these unlawful activities, 18 U.S.C. § 1952(a)(3).

**3.** Laforney was not made a defendant to the charges in the 1989 indictment.

twice sought and obtained superseding indictments against both men.

After the grand jury returned the second superseding indictment on March 12, 1991, Burns and Laforney moved to dismiss it on various grounds. Following an evidentiary hearing, the district court dismissed the conspiracy charges against Burns as breaches of his 1989 plea agreement. The court reasoned in substance that the various separate marijuana and cocaine conspiracies with which Burns was charged in the 1989 and 1991 indictments in fact constituted a single conspiracy to import both marijuana *and* cocaine. Because the conspiracy offenses charged in the 1991 indictment were the same as those charged in the 1989 indictment, the court held that Burns was entitled to specific performance of the terms of his plea agreement. Although the agreement did not specifically forbid the Government from further prosecuting Burns for anything other than violations of the criminal tax laws, the district court reasoned that a provision binding the Government not to oppose Burns's motion to dismiss the 1989 indictment's conspiracy counts also obliged prosecutors not to seek his subsequent indictment for the same substantive offenses. The court did not directly address Burns's motion to dismiss the interstate travel count in its memorandum opinion. That motion implicitly was denied, however, by the court's decision to grant Burns's motion only with respect to the 1991 indictment's three conspiracy counts. Laforney's motions, which challenged the substance of the indictment against him and had no foundation in an extrinsic plea agreement, were summarily denied.

Disappointed in their efforts to have the charges against them in the 1991 indictment dismissed, Burns and Laforney were tried before the district court in a two-day proceeding. The evidence, which consisted mainly of the testimony of Kunhardt, Taboada, and others who had travelled with Burns and Laforney to procure narcotics, resulted in Burns's conviction on the interstate travel count, the sole charge remaining against him. Laforney was convicted of conspiring to import cocaine and marijuana, but acquitted on his other three charges. The district court sentenced Burns and Laforney to terms of four and five years' imprisonment, respectively, and this appeal followed.

### B.

The following facts relate to Burns's subsidiary contention that the district court's refusal to appoint him a new attorney on the eve of trial infringed his Sixth Amendment right to have the assistance of counsel for his defense.

After the grand jury returned the four original counts of the 1991 indictment against Burns, the district court appointed an attorney to represent him in the forthcoming proceedings. In response to a request from Burns, the attorney successfully moved the district court to dismiss the conspiracy counts of the indictment. When Burns asked him to seek the dismissal of the interstate travel count as well, the attorney opined that his chances of persuading the district court to dismiss the count were scant. Counsel also declined to press the point at the hearing on the motions.[4] Burns now contends that his conviction on the interstate travel count stems directly from his attorney's failure zealously to pursue the dismissal of the count in the proceedings below.

Throughout the period encompassed by the return of the 1991 indictment and the district court's grant of his motion to dismiss the conspiracy counts, Burns was serving an active sentence in the federal prison at Butner, North Carolina.[5] Several weeks before his scheduled release, federal corrections officials informed Burns that

---

**4.** At the motions hearing, Burns's attorney conceded that the interstate travel count was "a separate substantive thing" from the indictment's conspiracy counts, and that "the Government [could] proceed with prosecution" on the travel charge.

**5.** The sentence was imposed upon Burns following his guilty plea to the marijuana-related charges raised in the 1989 indictment.

he would be turned over to the custody of United States marshals upon the expiration of his sentence unless bail were set on the 1991 indictment. Burns then asked his appointed attorney to file a bond motion and attempt to schedule a hearing on it before his release from Butner. Four days before Burns's release, and again two days later, the attorney informed him that no bond motion had been filed. On October 11, 1991 Burns was released from the Butner facility and taken by United States marshals to a jail in Columbus County, North Carolina to await trial on the charges lodged in the indictment. Approximately two weeks later Burns's attorney informed him that the bond motion at last had been filed, and that he merely was waiting for the district court to schedule a hearing in the matter. The bond hearing took place before a federal magistrate judge on November 1, 1991. The hearing resulted in Burns's release on his own recognizance pending trial on the 1991 indictment.

When Burns came before the district court for arraignment on the 1991 charges later in November, he explained the difficulties he had experienced in prodding his attorney to file the bond motion. Burns observed to the court that he had lost confidence in the attorney's ability to represent him as a result of what appeared to him a dereliction of the attorney's duty; he then asked the court to appoint him new counsel. Citing the delays such action would foster, and noting that Burns in fact had been released, the district court denied Burns's request. One week later, at pre-trial proceedings held in the absence of the jury, Burns renewed his request for substitute counsel, informing the court that he had filed a grievance against his appointed attorney with the North Carolina State Bar. Burns argued that the filing of the grievance created an irreconcilable conflict of interest between himself and the attorney, and rendered the appointment of new counsel a virtual necessity. The district court again rejected Burns's request, and the case proceeded to trial. Burns now appeals from the court's denial of his motion.

## II

Burns raises five assignments of error in challenging the district court's failure to dismiss the interstate travel count of the 1991 indictment and refusal to summon new counsel. We address these questions of law seriatim, reviewing the district court's conclusions de novo. *See United States v. Rusher*, 966 F.2d 868, 873 (4th Cir.), *cert. denied* — U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992).

Burns's sixth claim challenges the sufficiency of the evidence to establish venue for the proceedings in the Eastern District of North Carolina. In reviewing a defendant's challenge to the ability of evidence to sustain his conviction on appeal, the question we ask is familiar: whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard requires us to construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, both direct and circumstantial. *Id.*

## A.

We first address Burns's claim that the district court should have dismissed the interstate travel count of the 1991 indictment on the basis of his plea agreement with the Government.

■ As a preliminary matter, we observe that Burns's plea-agreement claim rests upon the assumption that the interstate travel count constituted an attempt by the Government to reprosecute him for the same conduct that the district court dismissed as violative of the plea agreement. This assumption is erroneous on two grounds. First, Congress has made travelling in interstate commerce with intent to facilitate a business enterprise involving distribution of narcotics a substantive offense separate from conspiracy. *Compare* 18 U.S.C. § 1952(a)(3) (criminalizing interstate travel) *with* 21 U.S.C. §§ 846,

963 (criminalizing certain narcotics conspiracies). The mere fact that evidence of interstate travel is offered to prove the objective fact of a conspiracy does not as a matter of law prevent the Government from prosecuting an individual subsequently for the separate interstate travel violation.

Second, although evidence of interstate travel may be introduced as part and parcel of the prosecution's efforts to prove the existence of a conspiracy, interstate travel is not an essential element of that proof. The elements of the crime of conspiracy are two: (1) an agreement between two or more persons (2) to commit in concert an unlawful act. *Morrison v. California,* 291 U.S. 82, 92, 54 S.Ct. 281, 285, 286, 78 L.Ed. 664 (1934). Proof that an overt act has been committed in furtherance of the conspiracy is not a legal requirement for establishing a conspiracy under either 21 U.S.C. § 846, *see United States v. Clark,* 928 F.2d 639, 641 (4th Cir.1991) (holding that conspiracy under 21 U.S.C. § 846 does not require proof of an overt act, and citing identical holdings from other circuits), or 21 U.S.C. § 963, *see United States v. Levy Auto Parts of Canada,* 787 F.2d 946, 951 (4th Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 108, 93 L.Ed.2d 56 (1986). We therefore reject Burns's claim that his prosecution on the interstate travel count legally constituted a reprosecution for the "same conduct" dismissed by the district court along with the conspiracy charges of the 1991 indictment.

Having disposed of this segment of Burns's challenge to his prosecution under the interstate travel count of the 1991 indictment, we turn to the dispositive issue: whether the plea agreement prohibits such a prosecution. The question is a narrow one. The parties do not dispute that an agreement was reached and evidenced in a fully integrated written document. Nor does the Government deny that Burns has fully performed his obligations under the agreement by pleading guilty, so that he is entitled to an appropriate remedy if the Government has breached the agreement. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (plurality opinion).

The specific question before us is likewise narrowly confined to the nature of the Government's assumed obligations with respect to further prosecutions. The text of the plea agreement memorandum is itself the best evidence of those obligations. It reads in pertinent part:

3. The Government agrees as follows:
  (a) That it will not oppose Defendant's motion to dismiss Count(s) One and Two of the Superceding [sic] Indictment.

. . . .

  (c) The Government will not prosecute the Defendant for any violations of federal criminal tax laws for the years of 1984 through 1988.
  (d) The Government certifies that it will not seek the prosecution of Lynn Jones, who resides with the [D]efendant at ... Hillsborough, North Carolina, or the [D]efendants [sic] mother Margareet [sic] Burns, for any acts they may have committed relative to the conspiracies set forth in the Superceding [sic] Indictment.
  (e) The Government represents that it has contacted the District Attorney for New Hanover and Pender Counties and the State of North Carolina has agreed to not prosecute the Defendant for the acts set forth in the Superceding [sic] Indictment.

The memorandum also contains a so-called "merger" clause, which provides: "This Memorandum ... constitutes the full and complete record of the plea agreement in this matter. There are no other terms of this agreement in addition to or different from the terms contained herein."

Pointing to clause 3(a) of the plea agreement, Burns contends that the district court erroneously failed to dismiss the interstate travel count of the 1991 indictment because interstate travel was a criminal overt act subsumed in the conspiracy charges the court already had dismissed. The Government insists to the contrary that no term of the agreement ever con-

templated the dismissal of interstate travel as a separate substantive offense. The Government therefore argues, based upon the Memorandum's fully integrated character, that the agreement should be enforced strictly, according to its terms.

In construing integrated plea agreements, we naturally and necessarily have found guidance in a closely analogous body of private law: the principles governing the formation and interpretation of commercial contracts. *See United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986); *see also* Peter Westen & David Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Calif.L.Rev. 471, 473–539 (1978) (discussing caselaw dealing with plea bargains in these terms). Of course, we recognize that the analogy of plea bargains to private contracts is not precise; as the Supreme Court has observed, the constitutional concerns undergirding the defendant's "contract" rights in a plea agreement demand broader and more vigorous protection than that accorded private contractual commitments. *See Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). Burns suggests that the district court's decision to permit the Government to reprosecute him for the separate substantive offense established by 18 U.S.C. § 1952(a)(3) contravenes these well-established constitutional principles. Although we acknowledge the gravity of criminal defendants' constitutional interests where plea agreements are concerned, the interpretive principles we derive from the private law of contracts "may be wholly dispositive in an appropriate case." *Id.* Our comments in *Harvey* are instructive on this point:

> [W]hether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be able, any more than would private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change

of mind. Such an approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, ... and in the wider concerns expressed in the exercise of supervisory jurisdiction over the administration of federal criminal justice.

*Harvey,* 791 F.2d at 300 (citing *Santobello,* 404 U.S. at 261, 92 S.Ct. at 498; *U.S. v. Carter,* 454 F.2d 426, 428) (4th Cir.1972).

Applying these principles here, we agree with the district court's interpretation of the disputed 1989 plea agreement provisions. First, the agreement is unambiguous as a matter of law. Its only promises with respect to subsequent prosecutions are contained in provisions 3(a), (c), (d), and (e). In these clauses the Government never expressly covenanted that it would not prosecute Burns for travelling in interstate commerce with intent to facilitate a business enterprise involving distribution of cocaine. Although the district court correctly concluded that clause 3(a) implicitly bound the Government not to reprosecute Burns for the marijuana-importation and distribution conspiracies alleged in those counts, clause 3(a) makes no promises about what other charges might or might not be brought subsequently. The objective standards we employ to resolve disputes over the meaning of contract terms reveal no ambiguity in the Government's agreement with respect to reprosecution. Burns's contention that the Government promised not to reprosecute him for a violation of 18 U.S.C. § 1952(a)(3) is simply an attempt to introduce new terms into a fully integrated plea agreement. Yet as Burns and the Government have executed a writing that purports to set forth a complete statement of their agreement, "the described exchange may not be supplemented with unenumerated terms." *United States v. Fentress,* 792 F.2d 461, 464 (4th Cir.1986) (citing *Restatement (Second) of Contracts* § 216 (1981)).

Nor is there sign or suggestion of the Government's having over-reached or em-

ployed unconscionable bargaining tools in coming to terms with Burns. Burns was represented by counsel throughout the plea negotiations and has not raised doubts that his lawyer provided him effective assistance within the meaning of the Sixth Amendment to the Constitution in the bargaining process. Post-agreement claims of uninduced mistake in reaching a bargain are of no avail. The Government owed Burns nothing more than fidelity to the terms of the agreement; the facts indicate that they were observed to the letter. None of the three other provisions that dealt with future prosecutions—clauses 3(c), (d), and (e)—mention interstate travel. The settled plea-bargaining law of this circuit is dispositive: "While the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise would strip the bargaining process itself of meaning and content." *Fentress*, 792 F.2d at 464–65.

We hold, therefore, that the district court correctly concluded that Burns's plea agreement did not bind the Government to forswear future prosecution of the discrete substantive offense of travelling in interstate commerce with intent to facilitate a business enterprise involving distribution of cocaine. Because the agreement may safely be enforced according to its terms, and because no evidence of over-reaching tainted the bargaining process, the fairness concerns rooted in the Fifth Amendment and enunciated in *Santobello* are not implicated here.

**B.**

Burns's second assignment of error alleges that the district court should have dismissed the interstate travel charge as a violation of the Double Jeopardy Clause of the Fifth Amendment.

■ The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopar-

dy of life or limb." U.S. Const. amend. V. As we noted in *United States v. Ragins*, 840 F.2d 1184 (4th Cir.1988), there are two distinct components to this guarantee:

The first provides protections against the imposition of cumulative *punishments* for the 'same offen[c]e' in a single criminal trial; the second against being subjected to successive *prosecutions* for the "same offen[c]e," without regard to the actual imposition of punishment.

*Id.* at 1187 (citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 2077, 23 L.Ed.2d 656 (1969)). Double jeopardy bars a succeeding prosecution if the proof actually used to establish the first offense would suffice to convict the defendant of the second offense. *Id.* at 1188; *Jordan v. Virginia*, 653 F.2d 870, 873–74 (4th Cir. 1980).[6] Invoking this guarantee against successive prosecutions, Burns argues that his trial on the interstate travel count is barred by the decision of the Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and by our own holdings in *Ragins* and *Jordan*, because the travel count "grows out of the same misconduct" as the conspiracy counts of the 1989 indictment.

Burns's arguments ignore the fact that he was not actually "tried" for double jeopardy purposes in the 1989 prosecution. The only trial Burns faced on the charges in the 1989 indictment ended in a hung jury, and a mistrial was declared. Ever since Justice Story delivered the Supreme Court's opinion in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), it has been settled law that a mistrial declared on account of jury deadlock does not prevent the Government from reindicting and retrying the defendant. *Id.* at 579–80; *see also Richardson v. United States*, 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984) (stating that "settled line of cases" holds that following hung

---

**6.** Burns concedes that for double jeopardy purposes the interstate travel count is a separate offense from conspiracy under the legislative-intent test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), because the formal elements of section 846 and section 963 conspiracies require proof of facts that interstate travel does not.

jury with retrial does not constitute double jeopardy). Burns therefore must rely upon the theory that the district court's dismissal of the conspiracy counts of the 1991 indictment creates a bar to subsequent prosecution on the interstate travel count.

■ Burns fails to understand, however, that double jeopardy applies after a pretrial dismissal only to the extent of collateral estoppel: the Government may not relitigate an issue of ultimate fact that has been resolved in a defendant's favor by a valid and final judgment in a criminal proceeding, if the fact necessarily determined in the first trial is an element of the second offense. *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Ragins,* 840 F.2d at 1194. As we have noted elsewhere herein, the settled law of this circuit holds that overt acts are not essential elements that must be proved in order to obtain convictions under either 21 U.S.C. § 846 or 21 U.S.C. § 963. Recently, in *United States v. Blackwell,* 900 F.2d 742 (4th Cir.1990), we recognized that dismissal of a conspiracy charge need not imply a determination that overt acts did not occur, and held that such dismissals do not bar prosecution of a substantive offense. *Id.* at 745–46. Indeed, even if Burns had been convicted or acquitted of the conspiracy counts of the 1989 indictment, the Double Jeopardy Clause would not have barred the interstate travel prosecution in the instant case. Conspiracies are separate and distinct from the acts done in furtherance of them; the "same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses." *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947); *see also United States v. Felix,* —— U.S. ——, —— – ——, 112 S.Ct. 1377, 1384–85, 118 L.Ed.2d 25 (1992) (reaffirming *Bayer* and the permissibility of successively prosecuting conspiracies and substantive offenses).

Hence we conclude that *Ragins, Jordan,* and *Grady* offer no support for Burns's arguments, and hold that the Double Jeopardy Clause was not offended by his prosecution on the indictment's travel count.

## C.

■ Third, Burns argues that the Government deliberately delayed indicting him for the interstate travel violation until after he had been sentenced for the crimes charged in the 1989 indictment, in order to reap the benefits of his bargained guilty plea while denying him the opportunity to seek a concurrent sentence for related offenses in the earlier indictment. He claims that this deliberate delay effectively deprived him of liberty without due process of law.

We do not question that it would offend the Due Process Clause for the government deliberately to delay indicting an individual suspected of crime in order "to gain tactical advantage over the accused." *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) (plurality opinion). But whether the Government actually *has* delayed in order to gain advantage in the prosecutorial fray is a question of fact, and questions of fact are the trial courts' special province. We are therefore not free to disturb the district court's findings of fact unless they are clearly erroneous. *E.g., United States v. Campbell,* 980 F.2d 245, 248 (4th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. —— (U.S. Feb. 1, 1993) (No. 92–7444).

In deference to the district court, we cannot say that the factual findings with respect to the Government's alleged delay in indicting Burns on the interstate travel count were clearly erroneous. In ruling on Burns's motion to dismiss, the court found that the Government had exhibited good faith throughout the investigations and "was justified in believing [until September 1989] that the involvement of [Burns] in the scheme was limited to marijuana and did not involve cocaine." Moreover, the evidence offered at trial tended to prove that when the Government indicted Burns in 1989 on marijuana importation and distribution charges, it could not prove that he had trafficked in cocaine.

Because the Government did not deliberately delay indicting Burns on the interstate travel charge in order to gain tactical

advantage over him, we hold that the Due Process Clause was not violated by his prosecution on that travel charge.

### D.

■ Fourth, Burns contends that we should exercise our "supervisory powers" over the administration of federal criminal justice to dismiss the interstate travel count.

Although it is true that the lower federal courts possess certain supervisory powers to control their own procedures in the interests of the fundamental principles of liberty and justice, *see McNabb v. United States*, 318 U.S. 332, 340–41, 63 S.Ct. 608, 612–13, 87 L.Ed. 819 (1943); *United States v. Williams*, — U.S. —, —, 112 S.Ct. 1735, 1741, 118 L.Ed.2d 352 (1992), it is equally true that the Supreme Court never has fully explored the source of or the limitations on these powers. *See* Sara S. Beale, *Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of the Federal Courts*, 84 Colum.L.Rev. 1433, 1433–34 (1984). The Court has made one principle quite clear, however: the supervisory power of the federal courts of appeals may not be used to prescribe prosecutorial conduct "in the first instance," before a grand jury. *Williams*, — U.S. at —, —, 112 S.Ct. at 1741–42. "Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside," *id.*, no supervisory judicial authority exists with respect to its workings.

Guided by these limiting precepts, we find it unnecessary to decide whether we should invoke our supervisory powers to bar the Government's prosecution of the interstate travel charge against Burns. As a matter of law, the interstate travel count of the 1991 indictment has significance independent of the conspiracy counts with which it originally was coupled. Moreover, we note that the Constitution commits the prosecutorial function to the Executive Branch, not the Judicial. *See* U.S. Const.

art. II, § 2. It is the province of the Government to decide the terms on which it will bring criminal indictments, and to inscribe the charges it will post in them. So long as those charges are grounded upon solid legal predicates not contravened by the Constitution or other laws of the United States, we are unlikely to invoke transcendent powers of ambiguous scope to destroy them.

■ Therefore, we reject Burns's contention that the district court should have drawn upon its supervisory powers to dismiss the interstate travel count.

### E.

■ Fifth, Burns argues that the district court erred in not granting his motion for judgment of acquittal after the evidence adduced at trial failed to establish that he travelled from the Eastern District of North Carolina to the Caribbean in February 1987 with specific intent to facilitate a business enterprise involving distribution of cocaine. The insufficiency of the Government's proof on this point, Burns says, made the Eastern District of North Carolina an improper venue for trial of the interstate travel count.

Rule 18 of the Federal Rules of Criminal Procedure sets forth the proper place of prosecution and trial for a criminal offense: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had *in a district in which the offense was committed.*" Fed.R.Crim.P. 18 (emphasis added). Venue in federal criminal cases is a question of fact in which the burden of proof rests with the Government. *See United States v. Rinke*, 778 F.2d 581, 584 (10th Cir.1985). Unlike other facts in the Government's case, however, venue may be proven by mere preponderance of the evidence. *United States v. Porter*, 821 F.2d 968, 975 (4th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). We join the courts of appeals for the Fifth, Ninth, Tenth, and Eleventh Circuits[7] in holding that for purposes of 18

---

**7.** *See United States v. Pepe*, 747 F.2d 632, 660 n. 44 (11th Cir.1984); *United States v. Bilstein*, 626

F.2d 774, 782–83 (10th Cir.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828

U.S.C. § 1952 "venue lies in any district in which the travel occurred, including the district in which it originated," *United States v. Pepe,* 747 F.2d 632, 660 n. 44 (11th Cir.1984), even if intermediate destinations were involved. *See United States v. McLean–Davis,* 795 F.2d 957, 958 (11th Cir.1986), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 941, 93 L.Ed.2d 991 (1987).

▮ Applying these standards, we affirm the district court's ruling that venue was proper in the Eastern District of North Carolina. The evidence at trial showed that (1) Burns dwelt in Burgaw, in the Eastern District of North Carolina, from 1985 until 1988; (2) Pender County was the headquarters for all three of the Caribbean cocaine shipments proved by the Government at trial; (3) 100 kilograms of cocaine brought by Burns from Aruba in the summer of 1986 were stored in Burgaw; (4) Burns was paid in Burgaw for his participation in the shipment of fifty kilograms from the Caicos Islands later the same summer; and (5) a $200,000 share of the proceeds from Burns's February 1987 journey to Aruba was set aside for him in Burgaw shortly after his return to the United States. We acknowledge that this evidence does not prove conclusively that Burns began or ended his 1987 trip to Aruba—on which the interstate travel charge was based—in Burgaw. Because venue need only be established by a preponderance of the evidence viewed in the light most favorable to the Government, however, we cannot say that the district court erred in inferring that the trip originated or terminated in Burgaw.

### F.

Finally, Burns contends that his right "to have the assistance of counsel for his defence," U.S. Const. amend. VI, was violated by the district court's failure to appoint new counsel to represent him after Burns filed a grievance against his court-appointed lawyer with the North Carolina State Bar. Citing *Strickland v. Washington,*

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Burns asserts that his conviction must be reversed on two grounds: first, because his attorney failed to file a bond motion that would have timely effected his release from federal custody; second, because the grievance created in his trial lawyer an irreconcilable conflict of interest that, in turn, constructively denied Burns effective assistance of counsel.

▮ As a preliminary matter, we note that although an indigent defendant has an absolute right to have counsel appointed to represent him, *see Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938), the Sixth Amendment does not guarantee representation by a lawyer in whom the defendant reposes special confidence or with whom the defendant is able to establish a "meaningful relationship." *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983). Therefore, a defendant's disappointment with appointed counsel can undermine his conviction only if counsel's performance fell below an objective standard of reasonableness under all the circumstances, *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2052–55, and if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

▮ Even if the allegations of the disciplinary complaint Burns filed with the North Carolina State Bar are accepted as true, they cannot meet the stringent standard enunciated in *Strickland.* The grievance argues at most that Burns's pre-trial release would have occurred sooner rather than later. That Burns was imprisoned temporarily before trial does not prove that the trial itself was unfair; as the district court rightly observed, whether the lawyer's unprofessional dereliction contributed to the delay in Burns's release has no bearing upon the lawyer's performance in defending him on the merits.

(1981); *United States v. Polizzi,* 500 F.2d 856 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States*

*v. Guinn,* 454 F.2d 29, 33 (5th Cir.), *cert. denied sub nom. Grimes v. United States,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972).

■ The attorney's failure to press the dismissal of the interstate travel count also breaks down before the *Strickland* hurdle: it cannot be said that "but for" counsel's decision to admit the viability of the interstate travel charge, the count would have been dismissed. For the reasons announced above, interstate travel is an offense entirely separate from conspiracy. In addition, we merely repeat what the Supreme Court clearly has stated when we observe that judicial scrutiny of an attorney's performance must be highly deferential. As Justice O'Connor stated in *Strickland*, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Under these circumstances, we decline to take the easy route.

■ Thwarted in his attempt to undermine his conviction by pointing to his attorney's failure to live up to expectations, Burns claims that his state bar grievance petition created a conflict of interest precluding adequate representation by appointed counsel. Burns quite rightly observes that he need not meet the *Strickland* "but for" test when he urges that a conflict of interest hobbled his defense. *Id.* at 692, 104 S.Ct. at 2067. Yet the Supreme Court never has suggested that a conflict between defendant and lawyer arising from a wholly separate proceeding— one that, as we have noted, had no bearing upon the attorney's ability zealously to represent Burns at trial—requires automatic reversal of a conviction. The Court in *Strickland* simply held that prejudice is presumed only if " 'an actual conflict of interest adversely affected [the] lawyer's performance.' " *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)). We do not think that Burns's appointed attorney could have gleaned any advantage for himself in disciplinary proceedings before the state bar by failing to employ his best exertions on Burns's behalf at trial. We divine from the record below no stitch of evidence tending to show that Burns's attorney failed to represent him in an objectively reasonable manner. In rejecting his Sixth Amendment claim, we are moved also by another consideration: to hold otherwise on such unpersuasive facts would invite criminal defendants anxious to rid themselves of unwanted lawyers to queue up at the doors of bar disciplinary committees on the eve of trial. Such is not an invitation we wish to extend.

Therefore, we hold that the district court did not contravene the Sixth Amendment by refusing to appoint new counsel for Burns in light of his expressed dissatisfaction with his trial lawyer.

### III

We now address Laforney's two claims in turn.

### A.

In his first assignment of error, Laforney asks us to reverse his conviction because, in his view, the charges against him were tainted with multiplicity and duplicity.

■ Although the terms "multiplicity" and "duplicity" are often confused, their meanings are distinct, and the remedies for their commission disparate. On the one hand, duplicity is "the joining in a single count of two or more distinct and separate offenses." 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982). Multiplicity, on the other hand, is "the charging of a single offense in several counts." *Id.* The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense; hence reversal is warranted if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments. *Id.* § 145, at 524–26. Even where the defendant has suffered multiple convictions and faces multiple sentences, the appropriate remedy is to vacate all of them but one. *See Ball v. United States*, 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985).

■ Laforney's suggestion that his indictment was duplicitous is a misnomer, because he does not contend that the indictment joined several offenses in a single

count. In truth, Laforney's argument is that the indictment was multiplicitous because it charged, in three separate counts, that he conspired to import, smuggle, and possess with intent to distribute marijuana and cocaine. Even if Laforney is correct and the indictment indeed is multiplicitous, his acquittal on the conspiracy to distribute (21 U.S.C. § 846), conspiracy to smuggle (18 U.S.C. § 545), and interstate travel (18 U.S.C. § 1952(a)(3)) counts renders moot any decision we might render on this point. Convicted and sentenced on only one count, Laforney is already in precisely the position the remedy authorized by *Ball* would leave him. Therefore, we decline to address directly the question presented by Laforney's assignment of error, and leave his sole conviction at rest.

### B.

Second, Laforney argues that the district court erred in denying his motions to set aside his guilty verdict because the evidence adduced against him at trial was insufficient to sustain the verdict.

■ The gravamen of Laforney's claim is that the evidence at trial failed to establish one of the elements of the importation conspiracy count of the indictment. To expose this alleged gap in the Government's proof, Laforney challenges the credibility of the prosecution witnesses, condemning them as his "cohorts in crime, . . . capable of lying to save themselves, and having obvious motive to do just that. . . ." This argument must be evaluated in light of the standard of review we are bound to employ on appeal: whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The settled law of this circuit recognizes that the testimony of a defendant's accomplices, standing alone and uncorroborated, can provide an adequate basis for conviction. *E.g., United States v. Figurski*, 545 F.2d 389, 392 (4th Cir.1976); *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir.1976). Therefore, Laforney's challenge to the credibility of the Government's witnesses fails by application of the *Jackson* standard of review.

■ Nor is Laforney's attack on the actual testimony of the Government's witnesses availing. Laforney does not contest the sufficiency of the evidence to establish the first element of the conspiracy offense, viz., "an agreement between two or more persons to undertake conduct that would violate the laws of the United States." *United States v. Clark*, 928 F.2d 639, 641–42 (4th Cir.1991). He does dispute, however, that the Government's proof was enough to sustain the second element: his own "wilful joinder" in the agreement. *Id.* at 642. Yet our careful examination of the record in the proceedings below, read in light of the *Jackson* standard, leaves us with no doubt that Laforney knowingly and wilfully joined in the conspiracy of which he was convicted. Robert Kunhardt testified that Laforney accompanied Burns and the other co-conspirators on two trips to procure cocaine in the Caribbean, and aided in bringing the drugs back into the United States. The record reveals that Laforney was fully aware of the trip's purpose: Kunhardt testified that Laforney suggested removing a part of a cocaine shipment they had brought from Aruba as payment for his participation. Luis Taboada testified that Laforney sailed to South Caicos on a third journey to collect fifty kilograms of cocaine the co-conspirators had buried there. Kunhardt stated that Laforney was paid $35,000 for his role in the shipment.

Viewing this evidence in the light most favorable to the Government, and drawing all reasonable inferences from it in the Government's favor, we are left with the clear and firm impression that the jury's guilty verdict against Laforney should not be overturned for insufficiency of the evidence.

### IV

For the foregoing reasons, we find Burns's and Laforney's arguments meritless. Accordingly, their convictions are

AFFIRMED.