30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruben Dario REYES, Defendant-Appellant.
 No. 93-5743.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 10, 1994.
Decided: July 25, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-93-93-2)
 David Robert Tanis, Winston-Salem, North Carolina, for Appellant.
 Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Benjamin H. White, Jr. United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Ruben Dario Reyes raises numerous issues on appeal following his conviction by a jury of possession with intent to distribute crack cocaine, a violation of 21 U.S.C. Sec. 841(a)(1) and (b)(1)(A) and 18 U.S.C. Sec. 2. We affirm.
 
 I.
 
 2
 The facts are not in dispute. At trial, government agents testified that on April 6, 1993, they were conducting routine drug investigations at the Amtrack station in Burlington, North Carolina when they saw defendant Reyes and co-defendant Williams talking to each other as they disembarked the train. The agents approached both individuals and asked to see their tickets. Reyes showed his ticket, which had the name "Williams" on it, and proceeded to tear it up. Both Reyes and Williams consented to a search and, after no drugs were found on them, they were allowed to depart. Shortly thereafter, an agent reapproached Williams one block from the station, searched him once more and this time found a pouch of crack cocaine (120.9 grams) in Williams' groin area. Williams pleaded guilty to related charges and agreed to testify against Reyes at trial.
 
 
 3
 Williams, an unemployed homeless person with a limited education and a drug habit, testified that he met Reyes about one month earlier while playing basketball and had agreed to do him "a favor" on the day in question. Williams stated that he met Reyes at Penn Station in New York City at 5:00 a.m. where he and Reyes boarded a train bound for Burlington, North Carolina. Prior to boarding the train, Williams stated that Reyes handed him the pouch of cocaine which Williams then placed in his pants. Once on the train, Williams gave the pouch back to Reyes, who later gave the pouch back to Williams when they approached the Burlington station. Williams stated that he was planning to place the pouch on top of a phone booth in Burlington had he not been arrested.
 
 II.
 
 4
 Reyes first complains that the government ignored its obligations under Giglio v. United States, 405 U.S. 150 (1972), by failing to provide him with information regarding Williams' diminished capacity following Reyes' discovery requests. Reyes notes that during Williams' sentencing (which occurred after Reyes' conviction), the government stipulated to Williams' diminished capacity and did not oppose the district court's decision to downwardly depart on Williams' sentence pursuant to Sec. 5K2.13 of the Sentencing Guidelines. Reyes contends that the government should have informed him of Williams' diminished capacity prior to Reyes' trial.
 
 
 5
 The weakness with Reyes' argument is that there is no evidence that the government had any clinical basis to conclude that Williams suffered from diminished capacity prior to the time of Reyes' trial. The fact that the government subsequently stipulated to Williams' condition at sentencing does not establish that the government had any such information in its possession at the time of trial. While Reyes suggests that the government had an affirmative duty to clinically assess Williams prior to having him testify, we decline to impose any such burden. Given the government's denial that it was privy to such information prior to trial, and the absence of any evidence by Reyes to the contrary, we find no merit to Reyes' argument that he was denied Giglio material.*
 
 
 6
 Reyes next challenges the sufficiency of the evidence at trial in light of the fact that the primary government witness (Williams) was an accomplice. In United States v. Burns, 990 F.2d 1426, 1439 (4th Cir.1993), cert. denied, 113 S.Ct. 2949 (1993), we held that the uncorroborated testimony of an accomplice, by itself, can serve as the basis for a conviction. See also United States v. Fisurisk, 545 F.2d 389, 392 (4th Cir.1976); United States v. Clark, 541 F.2d 1016, 1018 (4th Cir.1976). Williams' testimony, coupled with Reyes' conduct at the train station and the amount of crack cocaine recovered from Williams, more than adequately supports the verdict.
 
 
 7
 Reyes' final issue on appeal deals with the district court's alleged failure to prevent the government from asking leading questions of Williams. While Reyes concedes that the trial court has broad discretion in monitoring the questioning of witnesses, he maintains that the court abused its discretion and allowed the government to elicit testimony from Williams. We conclude otherwise. The limited number of leading questions the government asked either involved uncontested matters or served merely to clarify the previous testimony of the witness. Fed.R.Evid. 611(c).
 
 
 8
 The judgment entered by the district court is affirmed.
 
 AFFIRMED
 
 
 *
 We also note that defense counsel thoroughly cross-examined Williams as to his drug use. Moreover, Williams was questioned as to his limited education and illiteracy. Thus, the jury had ample opportunity to consider William's mental abilities when weighing his testimony