**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 93-5867

PAUL WINESTOCK, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-90-454-WN)

Argued: March 7, 1997

Decided: March 27, 1997

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Addison Shorter, Jr., Washington, D.C., for Appel-
lant. John Vincent Geise, Assistant United States Attorney, Barbara
Suzanne Skalla, Assistant United States Attorney, Greenbelt, Mary-
land, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States
Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Paul Winestock, Jr. was convicted of distribution of cocaine base and possession with intent to distribute cocaine, both in violation of 21 U.S.C. § 841(a)(1). Winestock appeals his convictions on two grounds -- that the trial court prevented him from developing an entrapment defense and that one of the counts on which he was convicted was duplicitous. Finding no merit in either contention, we affirm the judgment of the district court.

I.

After an extensive investigation into a drug distribution ring in the Woodridge section of Washington, D.C., government agents arrested Winestock and twenty-seven of his alleged co-conspirators on December 5, 1990. Seventeen of the defendants, including Winestock, were tried together in a sixty-nine day trial beginning in November 1991.

To prove the numerous counts of conspiracy, distribution of cocaine and cocaine base, and possession with intent to distribute, the government relied on the testimony of an informant, eight cooperating witnesses who had been part of the conspiracy, two undercover agents who had purchased drugs from Winestock and others, and numerous surveillance agents. The prosecution also introduced dozens of intercepted telephone conversations, telephone and other records, and items seized in the searches of approximately thirty-two locations.

The jury found Winestock guilty of both distribution of cocaine base and possession of cocaine with intent to distribute. Because of the large amounts of drugs involved, Winestock was sentenced to two concurrent terms of life imprisonment.

2

Winestock now appeals.

## II.

### A.

Winestock first argues that the trial court impermissibly limited the cross-examination of government special agent T.J. Dade, preventing Winestock and his co-defendants from developing an entrapment defense. He suggests that Dade's undercover exchanges with Winestock of cellular phones for crack may have constituted entrapment. Winestock asserts that the court prevented this line of defense when it told counsel for a co-defendant to move on to another topic rather than continuing the entrapment line of questioning during Dade's cross-examination.

Prior to Dade's testimony, on the nineteenth day of what turned out to be a sixty-nine day trial, the court had expressed serious concern about the slow progress of the trial, and especially the abuse of cross-examination. In response, the defense attorneys had submitted a proposal to regulate cross-examination by assigning specific topics to each attorney. Pursuant to this plan, (and after Winestock's attorney had already cross-examined Dade for forty-five transcript pages) the attorney for defendant Walter Smith had submitted to the court an estimate that he would cross-examine agent Dade for one hour. After he had used the full hour and was seeking an additional half hour to finish his cross-examination, the court raised its concerns about continuing questioning focusing on entrapment. The court noted that counsel had spent more than thirty-five minutes of the first hour attempting to develop entrapment evidence. He opined that additional efforts to elicit information from Dade relevant to entrapment would be a waste of time.

The district court acted well within its discretion in managing the cross-examination of Agent Dade. The Supreme Court has instructed that "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). This circuit has likewise recognized trial judges' "broad discretion to choreograph a

3

trial," including the authority to preclude counsel from "needlessly presenting cumulative evidence." <u>United States v. Tindle</u>, 808 F.2d 319, 327 (4th Cir. 1986). The judge in this case had ample evidence to conclude that the exchange of cellular phones for drugs, with drug dealers who had sold copious quantities of heroin, cocaine, and crack to a variety of other customers, could hardly constitute "governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." <u>United States v. Singh</u>, 54 F.3d 1182, 1189 (4th Cir. 1995). Thus the court's ruling that defense counsel should not continue endless entrapment questioning was a valid exercise of his authority. In the management of a mammoth sixty-nine day, seventeen-defendant trial, the district court quite properly admonished attorneys to avoid repetitive and fruitless lines of questioning.

B.

Winestock also alleges that count thirty-three of his indictment, charging him with possession with intent to distribute cocaine, was duplicitous. He argues that the count impermissibly combined two separate acts of receiving drug deliveries from two different people at two different times of the day in two different locations. <u>See United States v. Burns</u>, 990 F.2d 1426, 1438 (4th Cir. 1993) (defining duplicity of charges). On the day in question, Winestock received two kilograms of cocaine from Melvin Ford early in the morning, and five kilograms of cocaine from Cynthia Brown approximately four and a half hours later. Winestock argues that he could not be assured of jury unanimity on count thirty-three, since some of the jurors may have judged him guilty of only one of the two possessions, while other jurors may have found him guilty of only the other possession.

Winestock did not object to the alleged duplicity in the charging document prior to trial as required by Fed. R. Crim. P. 12(b)(2). Such a failure waives the issue, absent a showing of cause. Fed.R.Crim.P. 12(f); <u>United States v. Price</u>, 763 F.2d 640, 643 (4th Cir. 1985). Winestock argues to this court that the defect was not apparent on the face of the indictment, but became evident only during the government's presentation of its evidence. Even if this were true, it neither explains nor excuses Winestock's failure to object at <u>any</u> point during trial. Winestock has thus not shown good cause for failing to raise the

4

issue of duplicitousness at a time when the government could have cured any alleged defect or when the court could have given the jury specific clarifying instructions.

In any event, count thirty-three is not duplicitous. The government argued that all seven kilograms of cocaine powder received by Winestock on November 10 came from the same supplier in Philadelphia, known as "Jimmy" or "the little guy." Although the cocaine came in two separate deliveries, both deliveries were arranged by employees of "Jimmy." Both packages were labeled with the word "Fire." All seven kilos were stored by Winestock and his associate in the apartment of one of their friends, Robin Pope. Ample evidence supports the contention that the seven kilos were part of one single sales transaction between Winestock and "Jimmy," and therefore were properly charged as one count.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED