**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                     No. 96-4777

DONALD WAYNE JONES,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CR-96-70-BR)

Submitted: November 12, 1997

Decided: December 8, 1997

Before NIEMEYER and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

George W. Hughes, John F. Oates, Jr., LAW OFFICES OF GEORGE
W. HUGHES, Raleigh, North Carolina, for Appellant. Janice McKen-
zie Cole, United States Attorney, Anne M. Hayes, Assistant United
States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald Wayne Jones appeals his jury conviction of one count of conspiracy to possess with the intent to distribute cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994). Jones was indicted for conspiring to possess with the intent to distribute crack cocaine with multiple unnamed persons beginning in or about April 1995 and continuing until March 6, 1996. On appeal, Jones asserts that there was insufficient evidence to support the jury's finding of guilt. Because we find that there were sufficient probative facts to support the jury's conclusion, we affirm Jones' conviction.

In evaluating the sufficiency of the evidence to support a conviction, the relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). If there exists substantial evidence to support a verdict, viewing the evidence in the light most favorable to the government, the verdict must be sustained. See Glasser v. United States, 315 U.S. 60, 80 (1942). This court considers circumstantial and direct evidence, and allows the Government the benefit of all reasonable inferences from the facts proven to those sought to be established. See United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991); Tresvant, 677 F.2d at 1021.

Even the uncorroborated testimony of an accomplice may be sufficient to sustain a conviction, see United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993), and it is the role of the jury to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). This Court may reverse a jury verdict only when there is a complete absence of probative facts to support the conclusions

2

reached by the jury. See Sherrill White Constr., Inc. v. South Carolina Nat'l Bank, 713 F.2d 1047, 1050 (4th Cir. 1983).

To support Jones' conviction, the United States must prove: (1) the existence of an agreement between two or more persons to engage in conduct that violates a federal drug law; and (2) Jones' participation in that agreement. See United States v. Campbell , 980 F.2d 245, 249 (4th Cir. 1992). Circumstantial evidence may be used to prove knowledge and participation in a drug conspiracy. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996). We recognize that evidence of a buyer-seller relationship is relevant to the question of whether a conspiratorial relationship exists. See United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993) (holding that "evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators."). In addition, evidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy. See Burgos, 94 F.3d at 858 (identifying circumstantial factors which may tend to prove a conspiracy); United States v. Nesbitt , 90 F.3d 164, 167 (6th Cir. 1996) (citing Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943)); Mills, 995 F.2d at 485 n.1.

In this case, the Government presented testimony showing that Jones had continuing relationships and was involved in repeated drug transactions involving substantial quantities of drugs. Construed in the light most favorable to the Government, the following evidence was presented at trial. Bobby Wayne Debnam testified that between 1992 and June 1995 he sold drugs to Jones or employed him in the sale of drugs. He attested to details of Jones' and Debnam's joint efforts to distribute quantities of crack cocaine. He testified to joint dealings with Jones and another drug supplier wherein they collectively weighed and cooked one-half kilogram of cocaine. Also, in early 1995, the other supplier brought Jones, at Debnam's house, an estimated fifteen ounces of cocaine.

Charles Edward Harris testified that he was a drug dealer who sold crack and powder cocaine, and that Jones was one of his cocaine suppliers. Harris attested that he started buying crack cocaine from Jones in late 1994 or early 1995, in half-ounce quantities, but increased that amount approximately two to three ounces at a time, until June 3,

3

1995. He further testified to conversations with Jones regarding the economic advantage to buying larger quantities of cocaine. Harris also testified that an individual who worked for Jones delivered approximately fourteen grams of drugs to him at Jones' request and on Jones' behalf.

Percy Massenburg testified that he was a drug dealer who shared a drug source with Jones, and had seen Jones with drugs. He attested that he sent his son and nephew to buy drugs from Jones for him on a regular basis, when he was out of drugs to sell.

Thomas Wayne Herring testified that he, too, was a drug dealer who used Jones as a supplier. Herring made his purchases from Jones at Jones' Hodge Road residence; he bought quarter-ounce quantities of crack cocaine from Jones twice weekly. He testified to negotiations with Jones on prices and amounts of cocaine. He saw Jones possess approximately 500 grams of crack cocaine.

Edward Bernard Bradford also purchased cocaine from Jones at Jones' residence on several occasions. Finally, Michael Hinton, a police informant, testified to making three $40 drug purchases from Jones at Jones' residence. Before Jones would deal with Hinton the first time, he asked Monk, an individual asleep in a vehicle in Jones' yard, whether he knew Hinton. When Monk verified that he knew Hinton, Jones handed the crack cocaine to Monk, who in turn handed it to Hinton. Hinton then handed Monk the money, who in turn handed it to Jones.

In addition, the prosecution presented evidence that when Jones was stopped for a traffic violation, a consensual search revealed $5426 cash and a set of digital scales in Jones' pocket. Officers searched Jones' residence pursuant to a search warrant. They found a well-worn path behind the residence that had shallow holes on either side, one of which concealed a plastic bag containing crack cocaine, a small digital scale, and box of plastic sandwich bags, including some from which the corners had been removed. Testimony was introduced that such bags and scales are routinely used in the distribution of crack cocaine. Officers further found a loaded pistol-grip shotgun behind the couch in Jones' residence. They arrested two of Jones' relatives on the spot for possession of cocaine. The prosecution

4

also introduced evidence of significant amounts of cash that Jones spent to repair and improve various motor vehicles, which were located at Jones' residence.

While we agree with Jones that, standing alone, evidence of a buyer-seller relationship may not be sufficient evidence upon which to base a conspiracy conviction, we conclude that the evidence of repeated drug transactions involving substantial quantities of drugs was sufficient to show that Jones was involved in more than mere buyer-seller relationships. We find that even if the evidence regarding each individual drug transaction amounts to a buyer-seller relationship, when considered in the aggregate under the circumstances of this case, the evidence establishes a conspiracy. See Burgos, 94 F.3d at 858, 863 (utilizing totality of the evidence test); Mills, 995 F.2d at 485 n.1; see also United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993) (as to the nature of contemporary drug conspiracies being a loose-knit association of members linked by their mutual interest in supplying the demands of a particular drug consumption market); United States v. Edwards, 945 F.2d 1387, 1393 (7th Cir. 1991) (upholding conspiracy conviction based on engagement in "consistent series of smaller transactions" that furthered the ultimate object of supplying the consumer drug market demand). Further, we find that, viewing the evidence of the continuing relationships and repeated transactions in the light most favorable to the Government, any rational trier of fact could find Jones guilty, beyond a reasonable doubt, of conspiracy to possess with the intent to distribute cocaine base. See Glasser, 315 U.S. at 80; Burgos, 94 F.3d at 858.

While Jones argues that the government's evidence consisted exclusively of testimony by coconspirators that was self-interested and therefore unreliable, such an argument is unavailing. Jones had every opportunity to challenge the criminal histories, biases, and motivations of the government's witnesses during cross-examination and argument. The jury found the government's evidence believable and the jury's decision on the credibility of witnesses is not reviewable by this court. United States v. Saunders , 886 F.2d 56, 60 (4th Cir. 1989).

Accordingly, we affirm Jones' conviction. We dispense with oral argument because the facts and legal contentions are adequately pres-

5

ented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED

6